IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DONNA J. BEAULIEU, | ] |
| Plaintiff, | ] |
| v. | ] CV-04-BE-2211-S |
| CITY OF ALABASTER, et al., | ] |
| Defendants. | ] |

ENTERED
SEP 2 4 2004

MEMORANDUM OPINION

I. INTRODUCTION

Plaintiff Donna J. Beaulieu filed this lawsuit for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 against defendants City of Alabaster; Mayor David Frings; City Council President Rick Walters;[1] the City of Alabaster Police Department; and City of Alabaster police officer Brian Brandenburg alleging that Article X of the City's zoning ordinance, as amended, unduly burdens her First Amendment right of political expression.[2] For the reasons stated on the record, and elaborated upon below, the court finds that the City of Alabaster's zoning ordinance impermissibly burdens political speech

---

[1] Rick Walters and David Frings are signatories to the ordinance at issue in this case. *See* doc. # 20, *Ex.* 2.

[2] Plaintiff also argues that the City of Alabaster ordinance violates her Fourteenth Amendment due process and equal protection rights. The court pretermits discussion of these arguments because of its conclusion that section 15.2(E) of the ordinance violates the First Amendment.

1

in violation of the First Amendment.

Beaulieu questions the constitutionality of section 15.0 of the ordinance exempting political and other temporary signs from the general permitting requirements outlined in section 2.0 of the ordinance. Plaintiff specifically challenges section 15.2(E)(1) of the ordinance as relegating political signs to residential districts that have been improved with a dwelling.[3] According to the plaintiff, the above-referenced sections are content-based restrictions on purely political speech.

The defendants present several procedural and substantive arguments supporting the ordinance's constitutionality. According to the defendants, the plaintiff's failure to exhaust her administrative remedies and her lack of standing are insurmountable procedural hurdles to her lawsuit challenging the constitutionality of the City's sign ordinance.

In a substantive attack of the merits of the plaintiff's First Amendment claim, the

---

[3]Plaintiff initially challenged section 15.2(E)(5) of the ordinance limiting the posting of political signs on public right-of-ways, utility poles, and trees, regardless of whether the posting occurs on private or public property. However, the court ruled at the hearing on the motion for preliminary injunction that the City had the authority to impose such limitations on the posting of political signs pursuant to *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984).

Plaintiff also challenged section 15.2(E)(6) requiring that political signs be removed within ten days after an election. The parties do not dispute that the election at issue in this case is currently scheduled for November 2, 2004. Consequently, section 15.2(E)(6) does not appear to be at issue in this case.

Lastly, when asked at the August 31, 2004 trial to delineate those sections of the ordinance at issue in this constitutional challenge, plaintiff did not mention section 15.2(E)(2) of the ordinance restricting political signs to ten feet in height and thirty-two square feet in sign face area. Consequently, the court construes Beaulieu's omission of this section as an abandonment of a challenge to the constitutionality of section 15.2(E)(2).

defendants argue that the City's ordinance does not preclude purely political speech in B-5 commercial districts. Relying on the declaration of building official Steven Sims, the City argues that the ordinance merely requires a person wishing to post a political sign on commercial property to comply with the permitting requirements outlined in section 2.0 of the ordinance.[4] Based on this construction of the ordinance, the City argues that "[t]he only time that political signs are specifically referenced, they are given preferential treatment by being exempted from the general permit requirement for all signs."[5] Although not specifically addressing the validity of section 15.0 of the zoning ordinance and whether that portion of the ordinance is content-based, the defendants generally argue that the City's zoning ordinance is a valid, content-neutral time, place, and manner regulation on purely political speech. Consequently, the defendants argue that they have an important and substantial governmental interest in promoting traffic safety and promoting the City's aesthetic interest and that the City's ordinance is narrowly drawn to achieve these important and substantial government interests.[6]

After denying the plaintiff's motion for preliminary injunction (doc. # 16),[7] the

---

[4]Section 2.0 of the ordinance reads "Permits, fees, and inspections" and generally applies to signs that must be permitted pursuant to the ordinance.

[5]*See* Doc. # 20, pp. 9-10.

[6]*Id.*, at pp. 10-12.

[7]On July 19, 2004, the court denied the plaintiff's motion for expedited temporary restraining order (doc. # 4). The court likewise denied the preliminary injunction because the plaintiff failed to meet her procedural and substantive burdens. The plaintiff did a better job at the hearing on the merits of articulating more precisely the constitutional basis of the challenge to the ordinance.

3

court held a trial on the merits of the plaintiff's claims on August 18, 2004 and August 31, 2004. Currently pending before the court is the plaintiff's petition for permanent injunction and complaint for injunctive and declaratory relief. Both parties submitted evidentiary materials and briefs in support of their respective positions. At trial, the defendants elicited testimony from expert witness Dr. Eric Kelly, who drafted the amendments to the ordinance at issue in this case. The court has jurisdiction of this lawsuit under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction.

## II. FINDINGS OF FACT[8]

Beaulieu is a licenced attorney engaged in the active practice of law at 122 Main Street in the City of Alabaster, Alabama. Section 2.1 of the City's zoning ordinance provides that "[i]t shall be unlawful for any person to erect . . . any sign in the City or cause the same to be done, without first obtaining a building permit for each sign from the Building Official as required by the Ordinance."[9] In compliance with this portion of the ordinance, Beaulieu obtained a sign permit on September 26, 2003 for an on-premise, building-front sign that reads "Donna J. Beaulieu, Attorney at Law."

Beaulieu's office is located in a B-5 commercial district. Section 8.0 of the ordinance outlines the type of signs permitted in the B-5 commercial district and limits businesses like the plaintiff's law office to one canopy or projecting sign not to exceed

---

[8]The material facts of this case are undisputed.

[9]See 20, Ex. 2.

4

thirty-two (32) square feet or to one building wall sign not to exceed "ten (10) percent of the front building wall area . . . ."[10] Although section 12.0 of the ordinance permits the substitution of a lawful noncommerical message, it only permits the substitution "so long as said sign [substituted sign] complies with the size, height, area and *other requirements of this ordinance*." (emphasis added).

Plaintiff is also a candidate for Circuit Judge in Shelby County and is on the ballot for the November 2, 2004 general election. In an attempt to generate interest in her campaign, Beaulieu began displaying political signs in support of her candidacy. In April 2004, plaintiff displayed a political campaign sign on the sidewalk in front of her office in the B-5 commercial district. This sign was a stand-alone, upside down "V"-shaped sign about 6 feet high and 3 feet wide with two smaller "Donna J. Beaulieu for Circuit Judge" signs on both sides. Beaulieu's supporters also placed campaign signs in other locations within the Alabaster City limits, including on trees and on utility poles.

On June 18, 2004, Officer Brandenburg hand-delivered a notice to Beaulieu's office advising her that the political campaign sign on the sidewalk in front of her office violated Section 15.2(E)(1) of the City's sign ordinance. The citation stated:

> political signs may *only be displayed in a residential zoning district on property which is improved with a dwelling*. This letter serves as a ten (10) calendar day notice to correct these things to *avoid any further legal action*. Your cooperation in this matter is greatly appreciated.[11]

---

[10]*Id.*, section 8.0.

[11]*See* doc. # 17, *Ex.* 2.

5

(emphasis added).  Plaintiff removed the sign from her commercial property on June 28, 2004.

On July 15, 2004, Brandenburg again cited plaintiff for a violation of section 15.2(E)(5) of the ordinance.[12]  After receiving the July 15, 2004 citation, plaintiff removed her signs from trees and utility poles based on the location information provided by City enforcement officials.  Both citations warned Beaulieu that she had ten (10) calendar days to correct the ordinance violations to avoid further legal action.[13]

Section 15.2 is the only portion of the sign ordinance that specifically references political speech and provides:

> (1) Political signs *shall only be located in a residential zoning district on property which is improved with a dwelling* . . .
>
> (5) Political signs shall not be placed in a public right-of-way or on any utility pole or tree, whether on public or private property.

(emphasis added).  However, section 15.0 of the ordinance also provides for the display of other types of temporary signs without a permit.  For example, section 15.3(F)(3) of the ordinance permits business owners in the B-5 commercial district to display temporary

---

[12] *See* doc. # 17, *Ex.* 5.

[13] *Id.*, at *Ex.* 4 & 5.

6

real estate signs on the premises without a permit provided that the sign does not exceed thirty-two (32) square feet. The temporary real estate sign may be displayed in addition to the sign for which a business obtained a permit. The ordinance makes no similar provision for the display of political signs by business owners in the B-5 commercial district.[14]

### III. DISCUSSION

**A. Legal Framework for Assessing Claims under 42 U.S.C. § 1983**

The court rejects the defendants' procedural arguments related to standing and the exhaustion of administrative remedies. As a general rule, a plaintiff has standing to assert only a violation of his of her own rights. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988). Exceptions to this rule in the First Amendment context allow a plaintiff to challenge a law on its face on the grounds that it is content-based, *see R.A.V. v. City of St. Paul,* 505 U.S. 377, 381 (1992), or that it might chill the First Amendment rights not only of the plaintiff, but of others not before the court, *see Am. Booksellers,* 484 U.S. at 392-93.

Beaulieu has standing to bring this action based on her contention that the June 18, 2004 and July 15, 2004 ordinance citations injure her First Amendment rights, that the City's ordinance has a chilling effect on purely political speech, and the ordinance is a content-based restriction on political speech.

---

[14]*See* Transcript, August 31, 2004 trial on the merits. At the trial on the merits, defense counsel for the City argues that the plaintiff could display a political sign in front of her business if she substituted it for the commercial sign for which she already had on the premises.

The court also rejects the defendants' second procedural argument because the exhaustion of state administrative remedies is not a prerequisite to filing suit under 42 U.S.C. § 1983. *See Granite State Outdoor Adver. Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1118, n. 5 (11th Cir. 2003).

Having rejected the defendants' procedural arguments, the court next examines the general framework for analyzing an alleged deprivation of constitutional rights pursuant to 42 U.S.C. § 1983. To successfully assert a claim pursuant to section 1983, a plaintiff must establish that she suffered a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States and that the act or omission causing the deprivation was committed by a person acting under color of state law. *Nail v. Cmty. Action Agency of Calhoun County*, 805 F.2d 1500, 1501 (11th Cir. 1986). "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

The City ordinance at issue in this case was enacted pursuant to the City of Alabaster's municipal authority. Furthermore, Officer Brandenburg acted under color of state law when he cited the plaintiff for the ordinance violations on June 18, 2004 and July 15, 2004. The plaintiff thus has established the "under the color of state law

requirement." Therefore, to prevail, Beaulieu must demonstrate that she was "deprived . . . of a right secured under the Constitution or federal law." *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).

### B. The First Amendment and Political Speech

The plaintiff asserts that section 15.2(E)(1) of the ordinance violates her First Amendment right to conduct political speech in the B-5 commercial district. The First Amendment provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const., amend. I. The Fourteenth Amendment applies the First Amendment's prohibition to the states. *City of Ladue v. Gilleo*, 512 U.S. 43, 45 n. 1 (1994). The Supreme Court has long held that regulations designed to restrain speech on the basis of its content are subject to strict scrutiny and are presumptively invalid under the First Amendment. *See R.A.V.*, 505 U.S. at 382. Content-based regulations "by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994). An ordinance is content-based when the content of the speech determines whether the ordinance applies. *Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123, 131 (1992).

Beaulieu argues that the City's ordinance prohibiting political campaign signs in the B-5 commercial district is content-based because a person must read the sign to determine whether the sign is allowed within the business district and because the City's

ordinance favors commercial speech over political speech.[15] Not surprisingly, the defendants disagree. They argue that the ordinance is content-neutral because it does not attempt to regulate or restrict the content of any sign allowed under the ordinance, but merely regulates the location, timing, and manner in which the sign is displayed.[16] The court acknowledges that the cases cited by the parties support both arguments. However, the cases cited by each side primarily involve constraints on commercial speech, not political speech and are not directly applicable to this case. *Compare Lamar Adver. Co. v. City of Douglasville*, 254 F. Supp.2d 1321, 1331-32 (N.D. Ga. 2003) (cited by the plaintiff in support of her argument that the ordinance at issue in this case is content-based) *with Messer v. City of Douglasville*, 975 F.2d 1505, 1510 (11th Cir. 1992) (cited by the defendants in support of their argument that the ordinance at issue in this case is content-neutral).

In interpreting the First Amendment within the context of political speech, the Supreme Court holds that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989). When a law burdens core political speech, courts apply "exacting scrutiny" and uphold the restriction *only* if it is narrowly tailored to serve an *overriding* state interest. *McIntyre v. Ohio Elections*

---

[15] *See* doc. # 17, p. 6.

[16] *See* doc. #20, p. 10-13.

*Comm'n*, 514 U.S. 334, 346-47 (1995) (citing *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 786 (1978)).

In *McIntyre*, the plaintiff was fined for passing out pamphlets opposing a school tax levy in violation of an Ohio statute prohibiting the distribution of anonymous campaign literature. *McIntyre*, 514 U.S. at 337. The statute at issue in *McIntyre* regulated purely political speech and according to the Supreme Court, applied evenhandedly to advocates of differing viewpoints. *McIntyre*, 514 U.S. at 345. Despite this recognition of the seemingly content neutrality of the challenged statutory provision, the Court nevertheless reasoned that the Ohio ordinance prohibiting the distribution of anonymous campaign literature "'involves a limitation on political expression subject to exacting scrutiny.'" *McIntyre*, 514 at 345-46 (citing *Meyer v. Grant*, 486 U.S. 414, 420 (1988)). The Court further explained that the category of speech regulated by the Ohio statute occupies the core protection afforded by the First Amendment. *McIntyre*, 514 U.S. at 346. According to the *McIntyre* Court, "[t]he First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the brining about of political and social changes desired by the people.'" *McIntyre*, 514 U.S. at 346 (internal quotations and citations omitted).

Based on the above-referenced jurisprudential principles, the Court concluded that Ms. McIntyre's speech was entitled to the greatest constitutional protection and held that "[w]hen a law burdens core political speech, [the court] appl[ies] exacting scrutiny and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest."

11

*McIntyre*, 514 U.S. at 346. *See also, Fed. Elec. Comm'n v. Public Citizen*, 268 F.3d 1283, 1286 (11th Cir. 2001) (reiterating *McIntyre's* holding that "exacting scrutiny" is applied to determine whether the law is narrowly tailored to serve an "overriding" state interest and applying strict scrutiny to a federal campaign statute).[17] Against the backdrop of the above-referenced legal authority, the court considers the constitutionality of the sign ordinance at issue in this case.

As a preliminary matter, the court rejects the defendants' substantive arguments regarding the construction of the sign ordinance.[18] With the successful completion of the permitting requirement outlined in section 2.0 of the ordinance, the defendants argue that individuals like Ms. Beaulieu are allowed to post political signs in the B-5 commercial district. By affidavit of Steven Sims, City of Alabaster Building Official, the defendants asserted that political signs are not prohibited in the business district if the business owner obtains a permit for the sign and the sign meets the other requirements of the ordinance, including the limitation of one sign per business. However, defendant Brandenburg, the City's enforcement officer, relied on the plain language of the ordinance when he cited

---

[17]Although political speech is generally entitled to greater constitutional protection, the Supreme Court has, in some instances, limited purely political speech. *See Burson v. Freeman,* 504 U.S. 191, 199-201 (1992) (upholding a ban on temporary political signs within 100 feet of polling places); *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 804-5 (1984) (upholding the constitutionality of a Los Angeles ordinance prohibiting the posting of handbills and signs on utility poles and public property).

[18]The court does not address the defendants' argument that it must construe any ambiguity in such a manner to preserve the ordinance's unconstitutionality because, as explained in the body of this opinion, the court concludes that the section 15.2(E)(1) of the ordinance as written and applied unambiguously provides that political signs are limited to residential areas that have been improved with a dwelling.

plaintiff. Brandenburg's citation explains that "political signs may only be displayed in a residential zoning district on property which is improved with a dwelling."[19] The inconsistent interpretations and application of the ordinance by the two people who are supposed to know and understand the ordinance undermines the defendants' legal position. Therefore, the court rejects the defendants' interpretation of the ordinance because it does not comport with the clear language of section 15.2(E)(1) that political signs "shall only be located in a residential zoning district on property which is improved with a dwelling," nor with the manner in which the City enforced the ordinance.

    Having resolved the dispute about the appropriate interpretation of the ordinance, the court turns to the issue of whether section 15.2(E)(1) violates the plaintiff's First Amendment right to political expression because it restricts political speech to residential areas of the City to properties that have been improved with a dwelling. In their submissions to the court, the defendants argue that section 15.2(E)(1) does not thwart Beaulieu's First Amendment right to political expression. Section 8.0 of the ordinance limits business owners in the B-5 commercial district to one canopy or projecting sign. Furthermore, section 12.0 of the ordinance permits the substitution of a lawful commercial message "so long as said sign complies with the size, height, area, and other requirements of this ordinance." According to the defendants, section 8.0, when read in conjunction with section 12.0, permits a business owner like Beaulieu to substitute her on-premise,

---

[19] *See* doc. # 17, *Ex. 2*.

13

building-front sign that reads "Donna J. Beaulieu, Attorney at Law" for a temporary political sign endorsing her candidacy.

In the alternative, the defendants argue that "it would be absolutely permissible for the Plaintiff to replace the confirming sign that currently advertises her law practice with a sign that says 'Law Offices of Donna J. Beaulieu' on one half of the sign and 'Vote Donna J. Beaulieu for Circuit Judge' on the other half of the sign."[20] Therefore, the defendants argue that Ms. Beaulieu is not precluded from erecting a political campaign sign in the B-5 commercial district, and thus, is not divested of any First Amendment rights.

The court finds the defendants' arguments unpersuasive for two primary reasons. First, as outlined in an earlier portion of this opinion, the defendants' argument that political signs are permitted in the B-5 commercial district via the substitution of messages language contained in section 12.0 contradicts the clear language of section 15.2(E)(1) that political signs "shall only be located in a residential zoning district on property which is improved with a dwelling" and with the manner in which the City enforced the ordinance.

Second, and perhaps more importantly, a municipal regulation requiring proponents of political speech, like Ms. Beaulieu, to choose between displaying the *one* commercial sign permitted in the B-5 commercial district to announce the location of her business or substituting the commercial sign with a temporary political sign impermissibly

---

[20]*See* doc. # 29, p. 11.

14

burdens core political speech. *See McIntyre*, 514 U.S. at 346-47. In the scenario advanced by the defendants, candidates like Ms. Beaulieu, who are also business proprietors, face a proverbial "Hobson's choice" between advertising a business that is integral to their economic livelihood or generating public awareness through the relatively inexpensive vehicle of political campaign signs. *See e.g., Baldwin v. Redwood City*, 540 F.2d 1360, 1368 (9th Cir. 1976) (reasoning that "political posters have unique advantages. Their use may be localized to a degree that radio and newspaper advertising may not. With the exception of handbills, they are the least expensive means by which a candidate may achieve recognition among voters in a local election.").

Furthermore, the burden to core political speech is not ameliorated by Ms. Beaulieu's ability to advertise her law practice with a sign that reads "Law Offices of Donna J. Beaulieu" on one half of the sign and "Vote Donna J. Beaulieu for Circuit Judge" on the other half of the sign. Ms. Beaulieu's free speech rights would still be burdened in the above-referenced "mixed-message" scenario because the plaintiff would be required to dilute core political speech to advertise the location of her law practice.

The court envisions that business owners in the City of Alabaster have views concerning the political activities of that City. Under the ordinance at issue in this case, unless business owners also had property in the residential section that was improved by a dwelling or unless business owners were willing to sacrifice a commercial message advertising their business or were willing to permit the co-existence of commercial and non-commercial messages, business owners would have no place in which to exercise

15

their constitutional right of political expression. The above-referenced dilemma faced by Ms. Beaulieu and similarly-situated political candidates in attempting to erect campaign signs in the B-5 commercial district is precisely the type of burden on pure political speech that the *McIntyre* Court held triggered the strict scrutiny standard for analyzing the ordinance's constitutionality. Simply put, even with the benefit of the substitution of messages language contained in section 12.0 of the ordinance, the ability of the plaintiff to communicate with potential voters and engage in pure political speech is impermissibly burdened. Consequently, the court concludes that section 15.2(E)(1) of the ordinance - on its face and as applied - burdens core political speech.

Thus, under the "exacting scrutiny" applied by the Supreme Court in *McIntyre*, the City's prohibition of political speech in the B-5 commercial district must fail unless it is narrowly tailored to meet an overriding governmental interest. *See McIntyre*, 514 U.S. at 346-47. The defendants' arguments, all of which assume a significantly more lenient standard of review[21] and which focus on the City's interest in promoting aesthetics and traffic safety, do not survive the exacting scrutiny that this court must apply when a law burdens core political speech. Even where the government has declared a policy of promoting aesthetics and traffic safety, restrictions intended to accomplish those interests have traditionally failed to pass strict scrutiny when they burden political speech. *See City of Ladue,* 512 U.S. at 52-53; *Arlington County Republican Comm. v. Arlington County,*

---

[21]*See* doc. # 29, p. 12-16.

*Virginia*, 983 F.2d 594, 587 (4th Cir. 1993). Likewise, in this case, the court concludes that the City's interests in aesthetics and traffic safety, although substantial, are not sufficiently overriding to satisfy the exacting, strict scrutiny standard of review applied by the *McIntyre* Court.

In addition to impermissibly burdening core political speech, the court alternatively finds that section 15.2(E)(1) is a content-based restriction on purely political speech. In *Sugarman v. Village of Chester*, 192 F. Supp. 2d 282, 300 (S.D.N.Y. 2002), a former political candidate filed a lawsuit under 42 U.S.C. § 1983 alleging that various municipal sign ordinances regulating the posting of political signs violated her First Amendment right of free speech. While affirming the constitutionality of some of the municipal ordinances at issue in the case, the *Sugarman* court invalidated as content-based a sign ordinances enacted by the Villages of Hamptonburgh and Warwick. *Sugarman*, 192 F. Supp.2d at 297-98; 300. The court invalidated the ordinance enacted by the Village of Hamptonburgh because the ordinance enacted durational limitations on the posting of some temporary signs, but not others. *Sugarman*, 192 F. Supp. 2d at 297. The court ruled that this type of differential treatment between differing categories of temporary signs rendered the ordinance content-based. *Id.*

Similarly, the court invalidated the ordinance enacted by the Village of Warwick because it exempted political signs from permit requirements provided that they met durational and size limitations, but exempted real estate and other classes of noncommercial signs from permit requirements without imposing such limitations.

17

*Sugarman*, 192 F. Supp. 2d at 300. The *Sugarman* court reasoned that the differential treatment between political signs and commercial signs made the ordinance a content-based restriction triggering the strict scrutiny standard. 192 F. Supp. 2d at 300-301. *See also, Boos v. Barry,* 485 U.S. 312, 321 (1988) (holding that when a court determines that a municipal ordinance is content-based, the strict-scrutiny standard of review applies and the municipality must show that the regulation is necessary to serve a compelling state interest and that it is narrowly tailored to achieve a compelling state interest); *Matthews v. Town of Needham*, 764 F.2d 58, 60-61 (1st Cir. 1985) (holding that municipal ordinance prohibiting the posting of political signs but permitting the posting of specific types of commercial signs was a content-based restriction on pure political speech).

As recognized by the City's own expert witness, Dr. Eric Kelly, the City's ordinance actually favors commercial temporary signs over political temporary signs. For example, pursuant to section 15.3(F)(3) of the ordinance, temporary real estate signs may be displayed in the B-5 commercial district without a permit provided that the sign does not exceed thirty-two square feet of sign face area. Consequently, a business owner may display the one commercial sign for which he received a permit <u>and</u> one temporary "for sale" sign. However, if a business owner, like Ms. Beaulieu, wanted to exercise her constitutional right of political speech, she would have to substitute the political sign for the business sign. Allowing large temporary real estate signs in the business district while not allowing a temporary political sign of any dimension unless it is substituted for a permitted commercial sign favors commercial speech over political speech, and therefore,

18

is a content-based restriction triggering the strict scrutiny standard of review. Furthermore, to determine whether the temporary sign is a prohibited political sign or an allowed real estate sign requires that the enforcer of the ordinance read the sign. Therefore, the ordinance is not content-neutral. *See Nationalist Movement*, 505 U.S. at 131.

The City has not provided the court with any overriding or compelling state interest that is served by allowing one temporary real estate sign and only allowing a political sign if it is a substitution for a commercial sign for which a permit has already been issued, or requiring a permit for a temporary political sign if no other sign exists at the location. Based on the above-referenced differential treatment between temporary political signs and temporary commercial real estate signs, the court concludes that section 15.2(E)(1) of the ordinance is a content-based regulation of political speech that does not survive the strict scrutiny standard of review.

## IV. CONCLUSION

Based on the reasons outlined in this Memorandum Opinion, the court concludes that section 15.2(E)(1) of the City of Alabaster sign ordinance impermissibly burdens core political speech in violation of the First Amendment, is a content-based restriction that treats core political speech less favorably than commercial speech, and is not narrowly tailored to promote the City's stated governmental interests in aesthetics and traffic safety. Pursuant to its prior rulings in this case, the court concludes that section 15.2(E)(5) of the City of Alabaster sign ordinance limiting the posting of political signs on public right-of-

ways, utility poles, and trees is not an abridgment of the plaintiff's First Amendment right of political speech. A separate order delineating the court's specific findings will be entered contemporaneously with this Memorandum Opinion.

DONE and ORDERED this 24th day of September, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE